UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PORTSMOUTH AMBULANCE, INC., *et al.* | : : : | Case No. 1:12-cv-774 |
| Plaintiff, | : : | Judge Timothy S. Black |
| vs. | : : | |
| UNITED STATES OF AMERICA | : : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 6)**

This civil action is before the Court on Defendant's motion to dismiss (Doc. 6) and the parties' responsive memoranda. (Docs. 8, 9). Plaintiffs' claims arise from the Internal Revenue Service ("IRS")'s application of the proceeds of the sale of Plaintiff Portsmouth Ambulance, Inc. ("Portsmouth")'s assets toward the tax liabilities of Urgent Care Transport, Inc. ("Urgent Care"), an alleged alter ego of Portsmouth. Plaintiffs bring refund claims on behalf of both Plaintiffs and a claim for unlawful collection action. (Doc. 1 at 7-9).

### I. FACTS <u>AS ALLEGED</u> BY THE PLAINTIFFS

For purposes of this motion to dismiss, the Court must: (1) view the claims in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

**A. Tax Liens**

Portsmouth was an Ohio corporation that provided emergency medical and transportation services. (Doc. 1 at 2). Urgent Care was a separate Ohio corporation that became Portsmouth's wholly owned subsidiary in September 2007. (*Id*. at 3). Portsmouth failed to pay federal employment taxes and was assessed unemployment taxes for the periods ending 3/31/2008, 6/30/2008, 9/30/2008 and 12/31/2008 and penalties pursuant to Internal Revenue Code ("IRC") § 6721 for failing to file W-2s. (*Id*. at 4). Tax liens for the Portsmouth tax liability were filed on October 27, 2008, January 2, 2009, February 9, 2009 and May 4, 2009. (Doc. 1-2).

Prior to its purchase by Portsmouth, Urgent Care was also assessed unpaid corporate and employment taxes for years 2000, 2002, and 2005. (Doc. 1 at 4). These assessments were caused by Urgent Care's former owners, and not Plaintiffs. (*Id*. at 3). Tax liens were recorded against Urgent Care in March of 2003 and March of 2007. (*Id*. at 4).

In January 2009, a tax lien was filed against Portsmouth's assets for those tax liabilities Urgent Care had incurred. (Doc. 1-3). The lien resulted from the IRS classifying Portsmouth as Urgent Care's alter ego.

**B. Portsmouth's Asset Sale**

On June 18, 2009, Portsmouth's assets were sold and it ceased operations. Approximately $636,587.00 was provided to the IRS by or on behalf of Portsmouth. The IRS allocated this payment as follows: (i) $333,768.24 to the lien against Portsmouth for

2

Urgent Care's liabilities; (ii) $38,420.97 to Portsmouth's IRC §6721 penalty; (iii) $114,775.19 to Portsmouth's Employment (941) penalty for 3/30/2008 (a "non-trust fund" payment); (iv) $59,805.00 to Portsmouth's Employment penalty for 6/30/2008 (a "non-trust fund" payment); (v) $49,575.00 to Portsmouth's Unemployment penalty for 9/30/2008 (a "non-trust fund" payment); (vi) $40,242.00 as Portsmouth's Unemployment penalty for 12/31/2008 (a "non-trust fund" payment). (Doc. 1-4).

In other words, of the Portsmouth payment's $636,587.40, the IRS allocated $333,768.24 to satisfy and release the lien against Portsmouth's assets for Urgent Care's tax liability, while much of Portsmouth's own tax liability remained. Formal IRS claims for refund were submitted in 2010 and were subsequently denied. (Doc. 1-5).

## II. STANDARD OF REVIEW

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. Ohio 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Id.* When a district court reviews a facial attack, it takes the allegations in the complaint as true, and if those allegations establish federal claims, jurisdiction exists. *Id.* Accordingly, the standard used in reviewing Rule 12(b)(1) motions is similar to the safeguards employed for Rule 12(b)(6) motions. *Id.*

3

Under the principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the Court's jurisdiction. *See United States v. Testan*, 424 U.S. 392, 399 (1976). In this case, the applicable expression of this consent is found in 28 U.S.C. § 1346(a)(1), which vests district courts with jurisdiction to hear suits "against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." This waiver is not unlimited, however. No such suit may be brought "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard." 26 U.S.C. § 7422(a). The Code mandates that the taxpayer must first submit a claim with the IRS, *see* 26 U.S.C. § 7422(a), and that the taxpayer must file suit within two years of the IRS's disallowance of the claim. *See* 26 U.S.C. § 6532(a)(1). A district court lacks jurisdiction to entertain a cause of action if the taxpayer fails to satisfy these requirements.

### III. ANALYSIS

#### A. Counts I and II

Section 1346(a)(1) vests the U.S. district court with jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Plaintiffs' claims rest on their view that § 1346(a)(1) empowers the Court to order the reapplication of funds that the IRS

4

previously applied toward Urgent Care's tax liabilities toward Portsmouth's liabilities instead (Count I), and specifically toward the trust fund portions of those liabilities for which Plaintiff Boggs is personally liable (Count II). Defendant submits that § 1346(a)(1) does not provide the Court with jurisdiction to grant the requested relief and that Plaintiffs could only have proceeded under 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4).

By Plaintiffs' own logic, Portsmouth and Urgent Care were not classified as a single taxpayer by the IRS, because if they had been, although Portsmouth would have standing to bring a refund suit under § 1346(a)(1), the suit would necessarily fail as there is no dispute that Urgent Care had a tax liability. Defendant considered Portsmouth and Urgent Care separate taxpayers for assessment purposes, but also administratively determined that Portsmouth was Urgent Care's alter ego for collection purposes based on their close relationship, and thus that the proceeds of Portsmouth's assets were rightly applied toward Urgent Care's liabilities. The lack of a separate assessment against an entity that the IRS determines to be another taxpayer's alter ego for collection purposes is consistent with the IRC and case law.

A federal tax lien arises upon assessment and attaches to all of the delinquent taxpayer's property and rights to property. 26 U.S.C. §§ 6321, 6322. "The Supreme Court has broadly interpreted section 6321 to include not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005); *see also*

5

*United States v. Toler*, 666 F. Supp. 2d 872, 889 (S.D. Ohio 2009) ("[T]he United States may recover property held by a third party if it is determined that the third party is holding the property as an alter ego of the delinquent taxpayer.").

The question of whether a taxpayer can maintain a refund suit to recover money she paid toward someone else's tax liability is one that has evolved over time through interplay between Congress and the judiciary.   Prior to 1995, several courts held that § 1346(a)(1) only permitted a tax-refund suit to be maintained by the party that owed the tax, not a third party, even if the third party had paid the tax, but other courts disagreed, finding this interpretation of the statute unduly harsh and unfair.   *Compare, e.g., Pershing Div. of Donaldson, Lufkin & Jenrette Securities Corp. v. United States*, 22 F.3d 741, 743 (7th Cir. 1994) ("[O]nly persons legally liable for paying a given federal tax may bring a refund suit under this section."), *with Martin v. United States*, 895 F.2d 992, 994 (4th Cir. 1990) (allowing third party who paid tax of another to maintain suit because, "[t]he statute clearly allows one from whom the taxes are erroneously or wrongfully collected to sue for a refund of those taxes").

Ultimately, the Supreme Court held in *United States v. Williams*, 514 U.S. 527 (1995), that a litigant "who paid a tax under protest to remove a lien on her property, has standing to bring a refund action under 28 U.S.C. § 1346(a)(1), even though the tax she paid was assessed against a third party" as the Court did "not believe Congress intended to leave [such litigants] without a remedy."   *Id*.

However, after the Williams decision, Congress amended the IRC in 1998 to add 26

6

U.S.C. §§ 6325(b)(4) and 7426(a)(4). Section 6325(b)(4) provides:

> (4) RIGHT OF SUBSTITUTION OF VALUE.—
>
> (A) IN GENERAL.—At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner—
>
> (i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or
>
> (ii) furnishes a bond acceptable to the Secretary in a like amount.
>
> (B) REFUND OF DEPOSIT WITH INTEREST AND RELEASE OF BOND.— The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that—
>
> (i) the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or
>
> (ii) the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.
>
> (C) USE OF DEPOSIT, ETC., IF ACTION TO CONTEST LIEN NOT FILED.—If no action is filed under section 7426(a)(4) within the period prescribed therefor, the Secretary shall, within 60 days after the expiration of such period—
>
> (i) apply the amount deposited, or collect on such bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien; and
>
> (ii) refund (with interest as described in subparagraph (B)) any portion of the amount deposited which is not used to satisfy such liability.
>
> (D) EXCEPTION.—Subparagraph (A) shall not apply if the owner of the property is the person whose unsatisfied liability gave rise to the lien.

26 U.S.C. § 6325(b)(4). The text of § 6325(b)(4) refers to § 7426(a)(4), which adds:

> (4) SUBSTITUTION OF VALUE.—If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United

States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. No other action may be brought by such person for such a determination.

26 U.S.C. § 7426(a)(4).

These two statutory provisions address the concern expressed by the Supreme Court in *Williams* that a third party who pays a tax owed by another under protest might be left without a remedy. Such a plaintiff can now follow the specific procedure laid out in the IRC if she pays the tax of another in order to discharge a federal tax lien that the IRS has asserted against her property and then wishes to recover part or all of the payment on grounds that the assertion of the lien against her property by the IRS was wrongful. A certificate of discharge can be obtained under § 6325(b)(4) by making a deposit or furnishing a bond in the amount that the IRS determines is the value of its tax lien in the contested property, and then filing an action under § 7426(a)(4) within 120 days of the issuance of the certificate of discharge in order to contest the government's tax lien against the property, with the plaintiff potentially winning back the deposit or bond, with interest.

In 2007, the Supreme Court explained that its decision in *Williams* "that § 1346(a)(1) authorizes a tax-refund claim by a third party whose property was subjected to an allegedly wrongful tax lien" was limited to the situation that existed in 1995, when "no other remedy . . . was open to the plaintiff in that case." *EC Term of Years Trust v. United States*, 550 U.S. 429, 434-35 (2007). The Supreme Court added "that a precisely drawn, detailed statute pre-empts more general remedies," suggesting that §§ 6325(b)(4) and 7426(a)(4) have now displaced the more general remedy of § 1346(a)(1) in this area. *Id.*

at 433.

In *Munaco v. United States*, 522 F.3d 651 (6th Cir. 2008), the plaintiff sued the United States for a refund of the amount paid under § 1346(a)(1) after paying the tax liability of the prior owner of real property in order to clear the title to the property from a federal tax lien associated with the prior owner's tax debt. *Id*. at 652. Based on the Supreme Court's decisions in *Williams* and *EC Term of Years Trust*, the Sixth Circuit concluded "that Munaco's failure to follow the statute and to seek a certificate of discharge bars his suit" and that "[a]llowing Munaco to sue under § 1346 would ignore the fact that Congress passed a specific statutory remedy for persons in his position and would render meaningless the 120-day limitations period." 522 F.3d at 657.[1]

In *Four Rivers Investments, Inc. v. United States*, 77 Fed. Cl. 592 (2007), the plaintiff challenged the IRS's collection against it as alter ego of another taxpayer, just as Plaintiffs dispute that Portsmouth was Urgent Care's alter ego in this case. *Id*. at 594. The Court of Federal Claims held in *Four Rivers* "that § 1346(a)(1) cannot provide jurisdiction in this court for refund suits brought by third party real property owners who

---

[1] Other cases have reached the same conclusion. *See, e.g., Wagner v. United States*, 545 F.3d 298, 303 (5th Cir. 2008) ("Following *Williams*, Congress enacted § 7426(a)(4), and recent cases have noted that § 7426 is now the only avenue for third party actions."); *Stabler v. United States*, 786 F. Supp. 2d 1161, 1165-66 (E.D. La. 2011) (same); *Schuyler v. United States*, No. CV 11-7059-GHK (PLAx), 2011 WL 7463964 at *3 (C.D. Cal. Dec. 19, 2011) ("Indeed, every other case that we are aware of that has addressed this question has held that a taxpayer in Plaintiff's situation must utilize the procedures set forth in 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4) before filing a claim in district court."); *Cryster v. United States*, No. CV-060175-LRS, 2006 WL 3203585 at *5 (E.D. Wash. Nov. 2, 2006); *City of Richmond, Ky. v. United States*, 348 F. Supp. 2d 807, 814 (E.D. Ky. 2004); *see also* Rev. Rul. 2005-50, 2005-2 C.B. 124 ("[I]n light of amendments to sections 6325 and 7426 of the Code made by the IRS Restructuring and Reform Act of 1998, a person not liable for the underlying tax may not file a refund action under the holding *of United States v. Williams*, 514 U.S. 527 (1995).").

wish to challenge tax lien-related collections by the IRS and who have not pursued the remedy provided to them by §§ 6325(b)(4) and 7426(a)(4)." *Id*. at 603. The Court held this was so because "Congress has addressed a primary concern of the *Williams* court, by providing a remedy independent of § 1346(a)(1) for third party owners of property who pay the IRS to discharge a lien on their property." *Id*. at 602.

Portsmouth could have sought a certificate of discharge under § 6325(b)(4) after the IRS asserted a federal tax lien against it as the alter ego of Urgent Care by making a deposit or posting a bond for the amount of the lien interest that the IRS claimed in Portsmouth's assets based on Urgent Care's liabilities. Portsmouth then would have had 120 days to file an action under § 7426(a)(4) to challenge the IRS's alter-ego analysis and potentially obtain a court decision that the tax lien for Urgent Care's liabilities against the Portsmouth assets was without value. Portsmouth did not follow these procedures, however, and the text of § 7426(a)(4) expressly states that "[n]o other action," including an action brought under § 1346(a)(1), "may be brought by such person for such a determination."

In sum, Plaintiffs' challenge to the IRS determination that Portsmouth was the alter ego of Urgent Care, and thus that the proceeds of Portsmouth's assets could properly be applied to satisfy Urgent Care's liabilities, may only be brought under the terms of 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4), and not § 1346(a)(1).

Because Plaintiffs failed to comply with the exclusive statutory remedy available to them, Counts I and II are appropriately dismissed for lack of jurisdiction.

## B.    Count III

Section 7433(a) of the IRC provides:

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a).   Other than 26 U.S.C. § 7432, a closely related statute allowing damages for the IRS failure to release liens, § 7433 is "the exclusive remedy for recovering damages resulting from such actions." § 7433(a).   "[S]ection 7433's limited waiver of sovereign immunity must be read narrowly."  *Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir. 1999).[2]

A suit pursuant to this section "may be brought only within 2 years after the date the right of action accrues."   § 7433(d)(3).   The right of action accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action."   26 C.F.R. § 301.7433-2(g)(2).   Failure to file a § 7433 damages action within this two-year statutory period of limitations deprives the court of jurisdiction.  *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 637 (5th Cir. 2003) ("It is well-established that, if a waiver of sovereign immunity contains a limitations period, a plaintiff's failure to

---

[2]  *See also Gonsalves v. I.R.S.*, 975 F.2d 13, 15 (1st Cir. 1992) ("Section 7433's waiver of sovereign immunity, like any other, must be strictly observed and construed in favor of the sovereign." (quotations and citations omitted)).   The "waiver is limited to a challenge of improper collection procedures" and "does not extend to a challenge of tax liability."  *Hart v. United States*, No. 2:03-cv-1133, 2004 WL 1559569 at *8 (S.D. Ohio May 17, 2004); *see also Zolman v. I.R.S.*, 87 F. Supp. 2d 763, 765 (W.D. Mich. 1999).

11

file his action within that period deprives the court of jurisdiction.").

Plaintiffs' damages claims are based on two events, both of which occurred more than two years before the filing of the Complaint in this action on October 10, 2012. (Doc. 1). The first is the IRS's filing of the NFTL against Portsmouth as the alter ego of Urgent Care on January 6, 2009. (*Id.* at ¶ 58; Doc. 1-3). On that same date, the IRS provided notice of the NFTL filing directly to Portsmouth by letter. (*Id.*) The second is the application by the IRS of $333,768.24 of the proceeds of Portsmouth's assets toward Urgent Care's liabilities on April 15, 2010. (Doc. 1 at ¶ 59; Doc. 1-4). Even if Plaintiffs were not immediately aware of how the proceeds were applied, they became aware no later than the receipt by their attorney of a letter from the IRS dated May 19, 2010, enclosing IRS account transcripts showing how the proceeds of Portsmouth's assets had been applied toward the various Urgent Care and Portsmouth tax liabilities. (Doc. 1-4).

Because May 19, 2010 is more than two years prior to the filing of this action on October 10, 2012, the damages action is time-barred.

Plaintiffs contend that because their attorney filed an administrative claim on November 5, 2010, within the final six months of the two-year period after January 6, 2009, they are entitled to bring a damages suit "at any time after the administrative claim is filed." (Doc. 8 at 12) (quoting *Tenpenny v. United States*, 490 F. Supp. 2d 852, 858 (N.D. Ohio 2007)). However, the clear meaning of the *Tenpenny* opinion is that a taxpayer who files an administrative claim for damages within the final six months of the two-year limitations period may file a court action at any time before the expiration of the two-year

period, not at any time at all. As the Treasury Regulations state: "If an administrative claim is filed . . . during the last six months of the period of limitations . . . the taxpayer may file an action in federal district court any time after the administrative claim is filed and before the expiration of the period of limitations." 26 C.F.R. § 301.7433-1(d) (2). As Plaintiffs' cause of action accrued more than two years prior to the filing of the Complaint, the damages suit is time-barred under § 7433(d)(3).

Because Plaintiffs have failed to show that they have complied with the terms of the only applicable waiver of sovereign immunity allowing the damage claims, Count III is appropriately dismissed for lack of jurisdiction.

### C. Other Relief Requested

Finally, Plaintiffs' Complaint requests additional relief beyond that requested in Counts I through III, asking that the Court to: 1) determine "that the Alter Ego Lien is illegal and unenforceable against Portsmouth," 2) "Remove the Alter Ego Lien against Plaintiff Portsmouth," 3) "Remove Boggs' Trust Fund Recovery Penalties," and 4) "abate the amount of Boggs' Trust Fund Recovery Penalties." (Doc. 1 at 9).

The first two requests are moot because they refer to an NFTL for which the underlying liabilities have since been satisfied by the proceeds of the sale of Portsmouth's assets. *See* 26 U.S.C. § 6322 (defining the period of the federal tax lien as ending when the underlying liability is satisfied). Moreover, even if the Urgent Care liabilities remained due and owing, the Court would lack jurisdiction to determine that the NFTL is "illegal and unenforceable" and to "remove" it because of: (1) the Declaratory Judgment

13

Act (28 U.S.C. § 2201) which allows suits for declaratory judgment "except with respect to Federal taxes"); and(2) the Anti-Injunction Act (26 U.S.C. § 7421), which prohibits any "suit for the purpose of restraining the assessment or collection of any tax").

The third and fourth requests, that the Court "remove" and "abate" Boggs' § 6672 liabilities, are duplicative of one another and cannot be granted. Even if Plaintiffs were to prevail in obtaining a judgment that the proceeds from the sale of Portsmouth's assets that the IRS previously applied toward Urgent Care's liabilities must instead be reapplied toward Portsmouth's liabilities, the IRS would still be free to reapply those funds among Portsmouth's various liabilities in any manner that it sees fit. *See In re Southeast Waffles, LLC*, 460 B.R. 132, 140 n.6 (6th Cir. BAP 2011) ("Taxpayers may not designate the application of involuntary tax payments"); *Kinnie v. United States*, 994 F.2d 279, 287 (6th Cir. 1993) (recognizing IRS policy to apply involuntary payments toward non-trust fund liabilities before trust fund liabilities as trust fund liabilities can still potentially be recovered if an entity goes out of business, as Portsmouth allegedly has). The Court does not have jurisdiction to order the IRS to apply involuntary payments in any particular manner that would necessarily "remove" or "abate" the trust fund taxes.

As Plaintiffs fail to identify any statutory waiver of sovereign immunity allowing for the additional relief requested in their prayer, these claims are also appropriately dismissed.

## IV. CONCLUSION

Accordingly, based on the foregoing, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED**, Plaintiffs' claims are hereby **DISMISSED**, and this case is **CLOSED**.

**IT IS SO ORDERED.**

Date:   May 6, 2013                                         *s/ Timothy S. Black*
                                                            Timothy S. Black
                                                            United States District Judge